Marvin, J.
The relator is the clerk of the courts of Cuyahoga county, Ohio, and files his petition praying for a writ of mandamus to issue against the ■ defendants, commanding them to allow to him as a valid claim certain money which he says is due' to him as compensation for official services, and which the defendants refuse to allow.
The compensation of the clerk of this county is fixed by section 1365-1 of the Revised Statutes, and the part of such section to be construed here, reads:
“That in each county containing a city of the second grade of the first class, the compensation of the officers thereof shall be as follows: Clerk of the court of common oleas, an annual salary of four thousand dollars, then twenty per cent, the first year after the passage of this act, twenty per cent, the second year, after the passage of this act, and ten per cent, thereafter of all fees actually collected by him and paid by said clerk into the fee fund as hereinafter provided.”
This statute, as it now exists, was passed on the nth day of March, 1898, and so only the ten per cent, clause of the statute need be considered here, as the time is already past in which'twenty per cent, is allowed.
• The petition sets out that during the month of December, 1900, certain persons were tried and convicted of felonies in the court of common pleas of this county, and sentenced to imprisonment in the penitentiary of the state and to pay the *58 costs of prosecution; that execution was issued against the property of the persons thus convicted, for such costs; that nothing was realized upon said executions, and that the persons, so convicted, were thereafter conveyed to the penitentiary and delivered to the warden, together with certified cost bills in each case, which cost bills were allowed by the warden who certified such allowances; that the auditor of the state drew his warrant in favor of the sheriff, upon the state treasurer; that such warrants were paid to the sheriff; that the money, so paid to the sheriff, included the sum of $45.42 as fees lawfully taxed in the relator’s favor as{ such clerk, for official services rendered in said causes, and was turned over by the sheriff to the relator and by the relator paid into the county treasury to the credit of the f¿9 fund of said county and accounted for to the defendants. That, during the months of September, October, November and December, 1900, there accrued to the relator for official services performed for and in connection with the grand and petit juries of the county, the sum of $502.23;. that this sum was .paid to the relator by the treasurer of) said county., out of the general fund in the treasury, and the same was paid by the relator into the county treasury, to the credit of the fee fund of said county and was duly accounted ior to the defendants. That, between the 6th of October, 1900, and the 1st of January, 1901, there accrued to the relator a sum largely in excess of $300, in criminal cases pending in the court of common pleas of said county,, wherein the state failed to collect or pay costs due after diligent effort made therefor, and that, on account of the fee* m said cases, there was paid to him as clerk, out of the general tund of the county treasury, the sum of $300 which; was paid by him into the county treasury to the credit of the fee fund, and duly accounted for by him to the com*missioners.
That during the- months of December, 1900, and January and February, 1901, certain persons were tried and convicted of misdemeanors in the court of common pleas of said county and sentenced to pay certain fines and costs and, upon failure to pay such fines and costs, were committed to the workhouse of the city ■ of Cleveland; that costs in such *59 cases had been lawfully taxed for official services of the relator, amounting in ihe aggregate to $49.86, which sum was paid to the relator by the treasurer of the county out of the /general fund thereof and py ihe 'relator paid into the county treasury to the credit of the fee fund and duly accounted for to the defendants.
After having made all the collections hereinbefore named, the relator presented his claim for ten per cent, of the same to the commissioners, and demanded that it be allowed, which was refused by them.
To this petition the defendants filed a general demurrer. And so the question is raised as to whether the clerk is entitled to the allowance of the ten per cent, provided for in the statute, upon the money paid to him out as fees out of the general fund of the county treasury, and by him paid into the fee fund of the county treasury, and upon moneys paid to him as fees out of the state treasury and by him paid into the fee fund of the county treasury.
Prior to the passage of the statute under consideration and that to which this is an amendment, the compensation of the Clerk was entirely made up of fees.
The design of the statute, without doubt, was to reduce that compensation which had grown to be excessive, and so it was provided that the clerk should have a fixed salary of four thousand dollars, and, by the same statute, a salary was fixed for each of the other county officers. It being important, however, that the clerk should collect all fees from parties against whom they were taxed, which could possibly be collected, the provision for paying a percentage upon such fees was added. A similar provision is made for the sheriff. No such provision is made for the other officers; doubtless, for rhe reason that most of the fees paid tO' such other officers, are paid at the time the work is done, which is not generally true as to the clerk and the sheriff.
The money received by the clerk, which came from the state treasury, was paid to him under section 7336 of the Revised Statutes and the section immediately preceding.
The other moneys upon which the clerk claims the percentage, were paid to him under sections 1261, 1262 and 2107-v, which several sections provide for the payment of *60 costs in criminal cases out of the county treasury and for the payment of fees to the clerk for services rendered to the grand jury out of the county treasury. .
In support of the demurrer it is urged that these fees paid to the clerk from the state and county treasuries and by him paid to the county treasurer into the fee fund] are not, in any proper sense, included in the words “fees actually collected by him and paid by said clerk into the fee fund,” as found in the statute.
It is said that to take money from the county treasurer and immediately pay it to that, same treasurer, is, in no sense, “an actual collection,” although the payment to the treasurer by the, clerk is that it may be placed in a fund separate from the general fund from which it was taken, when paid to him. ■ And'it is said that the purpose of allowing this ten per cent, commission to the clerk was clearly to stimulate him to collect all the costs which could be collected from parties to litigation in courts, against whom the costs are assessed, and that this purpose does not exist as to These payments to be made out of the state and county treasuries.
It must not be be forgotten, however, that the statute providing for the compensation of the clerk by a salary,; does not, in any wise, affect the duty imposed upon him of collecting costs and fees. All such costs and fees are to be collected by him under the present statute, as were required to be collected before the e'nactment of this statute.
By section 1369-2 it is provided that “the fees, costs, percentages, penalties, allowances, and all other perquisites of whatever kind, which, by law, the clerk of the court of common pleas * * * in counties containing a city of the second grade of the first class, may receive and collect for any services rendered, shall be received and collected * * * for the sole use of the treasury of said county, as public moneys belonging to it, and shall be accounted for and paid over as such.”
Section 1365-3 provides: “Each of the severál officers named in the preceding sections shall submit to the county commissioners, monthly, during each year of their official *61 term, a certificate and sworn statement-in detail of all the costs, fees, percentages, penalties, allowances, and other perquisites of every kind in any cause, matter or proceeding) received py him for services rendered during the month preceding the time of making such statement.”
• And Section 1365-6 provides for the payment at the end of each month “into the county treasury, on the warrant of the county auditor to the credit of the fee fund, and account to the county commissioners, for the use of the county, all fees, costs, penalties, percentages, allowances and perquisites of every sort collected by him during said month.
It is not doubted that the clerk is bound to make report to the commissioners of these moneys, paid tp him out of the state and county treasuriesnor can it be doubted that he is bound to pay over to the county treasurer for-use of the fee fund all moneys so paid to ■ him'. And yet the language of this section requiring him to pay into the fee fund, requires him to pay only that which has been-' collected by him during said month.
If any claim -is made that the words used in section 1365-1, “actually collected by him,” and the words used in section 1365-6, “collected by him,” do not mean the same-thing, it follows that one may collect that which he does not “actually collect.” If this be so, there must be such a thing as- the constructive collection of fees, of which, probably, none of us have ever heard.
We are of the opinion that the term, “actually collected,” as used in the first section quoted from, and the word, “collected,” as used in the other section, are synonymous in their meaning, and that the clerk is entitled to a percentage on all moneys which come into his hands as fees and which he is required to pay into the fee fund.
'The case of the State ex rel. Pugh, Prosecuting Attorney v. Brewster, Auditor, 44 O. S. 249, is cited in support of the demurrer.
In that case, the Prosecuting Attorney of Hamliton County claimed a commission of ten per cent, on moneys paid to the'order of the clerk of the court of common pleas, under" the provisions of section 7336 and 7337 of the Revised' *62 Statutes. The statute under which the claim was made, is* section 1298, and reads:
“In addition to his salary, the prosecuting attorney, is entitled to ten per cent, on all moneys collected on fines, for-, feited recognizances, and costs in criminal causes, provided, that such commission shall not in any one case exceed one hundred dollars.”
In the opinion in that case, on page 250, this language is-used:
“The question arises upon the proper construction of the language, ‘on all moneys collected * * * on costs in criminal! causes,’ used in section 1298. Does the language embrace costs paid by the state to the order of the clerk under the sections above referred to, or is it confined to such criminal causes, in performance of the duty imposed on. him by section 1273, Revised Statutes? * * * Now, looking outside of section 1298 to other sections of the Revised Statutes, more or less related to it in subject matter, we-find that by section 7183 it is made the duty of the prosecuting attorney to prosecute and recover the penalty of all recognizances by him; and, by section 1273, to prosecute on. behalf of the state all complaints, and in every case of conviction to forthwith cause execution to be issued for the fines and costs, or costs only, as the case may be, and faithfully urge the collection until it is effected;’ and ‘forthwith pay over to the county treasurer all moneys belonging to-the state or county which come into his possession for fines, forfeitures, costs, or otherwise.’
“Now we think it is manifest that the mind of the legislature was directed to the provisions of these several sections when it enacted section 1298, and that the commission-there allowed on all moneys collected on fines, forfeited recognizances, and costs in criminal causes, has reference to such fines, forfeited recognizances, and costs in criminal-causes, as, by these sections, he is required to collect.”
Again, this language is used in the opinion:
“It is hardly to be supposed that the allowances of a commission on moneys collected by a prosecuting attorney in the , performance of a duty required of him by statute would be *63 associated with the allowance of a percentage on moneys neither collected nor required to be collected by him.”
Wilcox, Collister, Hogan & Parmelee} for Plaintiff in Error.
P. H. Kaiser, for Defendant in Error.
It will be observed that, in this opinion, stress is laid upon the fact that the moneys upon which the prosecuting attorney was claiming a percentage, were moneys, which in no sense, were ever collected by him; they never came into his hands, nor were they ever required to come into his hands; —which clearly distinguishes the case from the one at bar, where all moneys are required, by law, to come into the hands of the clerk.
We are of opinion that the moneys upon which the relator in- this action seeks to recover a percentage, are “fees actually collected by him and paid by said clerk into the fe'ef fund,” upon which he is entitled to the commission of ten per cent.
The demurrer is overruled.

Note— Wilcox, Collister, Hogan & Parmely, for Plaintiff in: Error: The fee system itself was not abolished by see.1356-1 B.. S., but was retained in its entirety as between tile officers and1" that portion of the public, including.the state, for whom they were called upon to perform official services. The question is, whether money now collected by the clerk from the county and' state treasury in oriminal oases in accordance with the provisions of the statutes in that respect, and paid into the fee fund, are fees “actually collected” by him within the meaning of sec. 1356-1. R. S. We must examine and compare B. S. secs. 1260,1261, 1262,7333, 7334 , 7366 and 7337, with B. S. secs. 1356-1, which allows the clerk the ten per cent, comnjission for fees collected.
The effeot of the salary scheme was to make the clerk a trustee of the fees, oosts, etc. earned and taxed in his office, and to make it his duty as such to collect and account for them.
“Fees actually collected by him” can only mean “fees actually collected by him cf the persons legally obliged to pay him such fees” — in other words of the persons legally indebted to him for such fees. B. S. Sec. 1365 6.
Formerly he was obliged to take active steps to collect his-fees in criminal cases from the county treasurer • under B. S. sec. 1261, This money did not come to him unsought and without effort on Mb part. It is the same now. To secure those fees he must first report to and settle with the county commis *64 sioners as required by law; second, he must prepare a certificate and get the same approved by the county commissioners; third, he must secure the warrant of the county auditor, and fourth,, he must present this warrant to the county treasurer for payment. And the same is true of felony cases except that the process is somewhat different. R. S. seo. 7333 et seq; 6 Am. and Eng. Enoy.of Law,(2nd ed.) 206; Purdy v. Independence, 75 Iowa, 356; Fitzpatrick v. Flagg, 5 Abb. Pr. (N. Y.) 21.
The amounts thus collected by the clerk are applied by him in payment of his costs in those eases for which he has been paid. He creiits such payment to the county or state treasury as the case may be,and from that time on he, as clerk, no longer has any olaim upon or interest in the fees taxed in such cases. His olaim for fees belongs thereafter to the county treasury or the state treasury as the case may be, and thereafter only the prosecuting attorney can collect such costs. R. S. .sees. 1278 and 1298.
Defendant’s counsel bases his case upon-the Brewster case, 44 Ohio St., 249. There is no analogy whatever between the clerk’s right to charge and his duty to collect fees earned and taxed by him in oriminal cases of the state under secs. 1260, 12sl, 1262, 7333, 7334, 7336, 7337 R. S., and to charge a commission of ten per cent, therefor under seo. 1536-1 R. S., and the county prosecutor’s'duty to collect costs of the defendants in criminal cases when the state'has secured convictions under secs. 1273 and 1298, R. S. It is nowhere made the duty of the prosecuting attorney to collect costs of the state in criminal cases for the benefit of the officers entitled to such costs.
But this is altogether different with the clerk with regard to collecting such money. These fees were earned in the service of the state and taxed and collected by him by virtue of the statutes whioh both authorized and required him to tax and collect on the one side and the state to pay on the other.
The supreme court in the Brewster case clearly recognized that the state after making such payment was subrogated to the right of the clerk and the sheriff,for costs in those oases in whieh the state had paid them their costs, and that thereafter the státe owned the judgment claims of the clerk and the sheriff for costs against such defendants.
Besides the act itself leaves no room for doubt about what must be included in the phrase “Fees actually collected by him” which embraces “fees” of “every sort” and from every souioe. R. S. sec. 1365-6 which provides as follows: “Each of said officers shall, at the end of each month, pay into the county treasury, on the warrant of the county auditor, to the credit of the fee fund,and account to the county commissioners, for the use of the county, all the fees, costs, penalties, percentages,allowances and perquisites of every sort collected by him during said month.” If the money received by the clerk from the county and state treasuries in payment of fees in criminal-cases, is not-money collected by him for fees, then he is under no obligation under the statute to account for the same, nor is he subject to the penalties of the aot for failing to pay the same over to the credit of the fee fund.